## KITTS et al. v. HANNA et al.

District Court, E. D. Pennsylvania. February 20, 1928.

No. 4237.

Benjamin H. Ludlow, of Philadelphia, Pa., for plaintiffs.

E. A. Howell, of Chester, Pa., for administrator.

K. Montgomery and J. H. Ward Hinkson, both of Chester, Pa., for Cambridge Trust Co.

Taylor, Chadwick & Weeks, of Chester, Pa., for Chester Times.

KIRKPATRICK, District Judge. This is a bill in equity for the reconveyance to the plaintiffs of certain corporate stock acquired by Frank C. Wallace, the defendant's predecessor in title, by purchase of the interest of his father, John A. Wallace, a deceased partner in the business of two newspapers. The bill is drawn upon the theory that the transferee took in trust for the plaintiffs.

The facts stated in the bill are as follows:

John A. Wallace, who was the original owner of the partnership interests in question, died March 23, 1915. He left to survive him a widow and four children, Frank C. Wallace (now deceased), and three daughters, who are the plaintiffs here. By his will he left his estate (including his newspaper interests) to his executors in trusts to make certain periodical payments from income to this widow and children during the life of his widow and until final settlement of the estate. He also directed that his son, Frank C. Wallace, might "go into" the newspapers as the sole representative of the estate if he so desired, and that if he did he should receive a salary out of the income of the estate. He appointed Frank C. Wallace and the Cambridge Trust Company his executors.

The sixth paragraph of the will of John A. Wallace provided that his son, Frank C. Wallace, should "have first opportunity to purchase my interest in the Chester Times and the Morning Republican at such price and on such terms as shall in the judgment of my Executors be fair and just to the other heirs." In the event that Frank C. Wallace should decline to purchase within five years after the death of the widow, then the newspaper interests were to be sold at the discretion of the executors as to price and terms. He further directed that "except as provided for in paragraph 6" his entire estate should be settled within two years from the death of his widow, and he empowered his executors to sell all his estate at public or private sale, and directed that the proceeds be divided equally among his children (with certain deductions on account of gifts made during his lifetime). The effect of these provisions is to extend the trust as to the newspaper interests, together with the option to Frank C. Wallace to purchase the same until five years after the widow's death (unless the option should be sooner exercised), irrespective of the sale and distribution of the other assets of the estate. There is nothing in the will to forbid the exercise of the option at any earlier time after the death of the testator. The fact that a trust is created, continuing until the death of the widow does not militate against this conclusion, because the sale of the newspaper interests would simply change

the form of the trust assets, and the trust would continue as to the proceeds.

■ On September 20, 1915, six months after his father's death and while the widow was still living, Frank C. Wallace as an individual purchased from himself and the Cambridge Trust Company, executors of John A. Wallace, the partnership interests in the newspapers by an instrument under seal, which is set forth in full in the bill in equity as "Exhibit B." (The bill of sale referred to was supplementary to "Exhibit B" and conveyed the testator's interest in the machinery and personal property.) The widow and all the plaintiffs joined in the agreement and executed it as parties. The price was $55,-000, for which Mr. Wallace agreed to give his note to the executors of his father's estate. The agreement contemplated that the business of the two papers would be incorporated within a short time, and Mr. Wallace agreed to assign to the estate, as collateral security, the corporate stock which he would receive for his father's interest, with the provision that until the note was paid the dividends declared upon the stock so held were to belong to the estate (paragraph 14). The agreement is in form an absolute transfer and contains a full release by the plaintiffs of the executors for all claims by reason of anything pertaining to the interest of their father in the newspapers.

Subsequently, on October 1, 1915, the newspapers were incorporated, stock was issued and assigned as required in the agreement, and in general the terms of the agreement were fully carried out. Frank C. Wallace died January 5, 1927, and the defendant James Hanna, administrator, represents his interests upon the record. The testator's widow survived until June 23, 1927.[1]

The contention of the plaintiffs is that a trust in their favor arose upon the transfer effected by the agreement of September 20, 1915, and they base their contention upon either of two alternative theories: (a) That at the time of the transfer there was a mutual understanding between all the parties that Frank C. Wallace was to take not absolutely but in trust for the estate; (b) that apart from any of such understanding, a resulting trust arose by reason of the transaction being a sale by an executor and trustee to himself under conditions rendering it constructively fraudulent.

\* \* \* \* \* \* \*

The bill discloses such laches on the part of the plaintiffs as would be a bar to the enforcement in equity of any rights which they might otherwise have. In Hammond v. Hopkins, 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134, a case upon its facts presenting many similarities to the case at bar, the Supreme Court pointed out that the rule as to laches "is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. Each case must necessarily be governed by its own circumstances, since, though the lapse of a few years may be sufficient to defeat the action in one case, a longer period may be held requisite in another, dependent upon the situation of the parties, the extent of their knowledge or means of information, great changes in values, the want of probable grounds for the imputation of intentional fraud, the destruction of specific testimony, the absence of any reasonable impediment or hindrance to the assertion of the alleged rights, and the like." In the case at bar, the transaction complained of occurred more than 12 years ago. Frank C. Wallace, whose conveyance is the objective of the plaintiffs' present attack, is dead. The property admittedly has increased greatly in value since the time of the sale, and the difficulty of ascertaining the true value of a going business of this kind at a time 12 years ago is apparent. During all this period, the plaintiffs were sui juris and under no impediments which would have prevented their investigating and learning the real value of the business at any time.

To avoid the implication of laches, they rely first on the argument that, since the will of John A. Wallace did not provide for distribution until the death of his widow and she did not die until June 23, 1927, the rights of the parties did not vest until the end of the life estate. I cannot agree with this construction of the will, however. So far as any rights in the actual property conveyed, namely, the interest of the testator in the going business, are concerned, the rights of the parties were no different after the widow's death from what they were before, and in fact that would have remained the same for five years after her death had the option not been exercised before that time.

■ Secondly, the plaintiffs say that the payment of dividends by Frank C. Wallace to them induced the belief on their part that he was holding the property in trust for them, and consequently there was a continued recognition by him of their rights, thus

---

[1] Only that portion of the opinion discussing the question of laches is reported.

excusing delay on their part. (The bill does not state that the admissions made by Frank C. Wallace that the stock of the corporation was in fact the property of the estate of his father were made to the plaintiffs or came to their knowledge.) Now, it will be noted that the agreement of September 20, 1915, provides that, until the note given by Mr. Wallace is paid, all dividends which might be declared on the stock were to belong to the plaintiffs. It does not appear from the bill when the note was paid, or how long (if at all) Mr. Wallace paid the plaintiffs dividends after his obligation under the agreement to do so ceased. Even if they continued for some time, however, such continuance or "sharing with the plaintiffs" as is set forth in the twenty-eighth paragraph of the bill would be quite as consistent with a gift by Mr. Wallace to his sisters as with any acknowledgment of their rights to such dividends. The portions of the bill relied on by the plaintiffs do not overcome the inference of laches arising from all the facts surrounding the plaintiffs' twelve years' silence.

\* \* \* \* \* \* \*

In view of the foregoing, the bill will be dismissed.